E-FILED
Wednesday, 21 February, 2007  03:31:52 PM
Clerk, U.S. District Court, ILCD

                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF ILLINOIS

BARBARA BOSCH,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )   Case No. 03-1408
                                        )
SUSAN BALL-KELL and DONALD RAGER,       )
                                        )
        Defendant.                      )

                              **O R D E R**

This matter is now before the Court on the Motions in Limine filed by both parties. Each motion will be addressed in turn.

   **1.   Plaintiff's Motion in Limine No. 1 to Bar Testimony Regarding Any Advice of Counsel Defense [#83]**

Plaintiff argues that although Defendants have not pled "advice of counsel" as an affirmative defense, they alluded to conversations with University counsel regarding the legality of copying her teaching materials in their depositions. Counsel then objected to questioning on these statements on the basis of attorney-client privilege. Plaintiff then inquired further and was told that Defendants would not rely on advice of counsel they may have received as a defense to the charge of copyright infringement.

Defendants concede that they will not offer an "advice of counsel" defense. However, they indicate that their respective states-of-mind are relevant to their defense that they acted in good faith at all times and that their state-of-mind may properly be based on counsel's advice without divulging what the advice actually was. This distinction was recognized by the Third Circuit in Rhone-Poulenc Rorer, Inc. v. Home Indemnity Company, 32 F.3d 851, 863 (3rd Cir. 1994), where the court noted that advice from counsel does not

necessarily become in issue simply because the advice might affect the party's state of mind in a relevant manner.

> Thus, in a patent suit, where an infringer is alleged to have acted willfully, the advice of the infringer's lawyer may be relevant to the question of whether the infringer acted with a willful state of mind. However, the advice of the infringer's counsel is not placed in issue, and the privilege is not waived unless the infringer seeks to limit its liability by describing that advice and by asserting that he relied on that advice.

Id. The Seventh Circuit adopted the Third Circuit's reasoning generally In Garcia v. Zenith Electronics Corp., 58 F.3d 1171, 1175 (7th Cir. 1995).

The Court finds that so long as Defendants do not cross the boundary lines set forth in Rhone-Poulenc, the have not violated their agreement to not assert an advice of counsel defense. Accordingly, Plaintiff's motion is granted to the extent that Defendants will be held to their agreement to not introduce an advice of counsel defense, and denied to the extent that it seeks to prohibit the limited reference to counsel's advice as part of establishing state-of-mine that is permitted under Rhone-Poulenc and Garcia.

**2.    Plaintiff's Motion in Limine No. 2 to Bar Testimony of Doctors Dennis Crnkovich and Michelle Hines [#84]**

Plaintiff argues that the testimony of these two treating physicians was taken as part of the discovery on her claim for intentional infliction of emotional distress. As the Court previously granted summary judgment in favor of Defendants on that claim and there are no claims for emotional damages remaining in the case, Plaintiff argues that such testimony is not relevant to the claims of direct and contributory infringement being presented at trial.

The Court is unable to resolve this evidentiary dispute prior to trial. Although the Court agrees that the lack of any claim for emotional damages makes the testimony of

Plaintiff's treating physicians appear to be less relevant, Plaintiff has indicated that she will testify regarding Defendants' conduct leading up to her resignation from the University and suggest that she was constructively discharged. To the extent that she does so, she may open the door to the presentation of evidence refuting her allegations and providing the Defendants' reasons for having taken the actions that they did. It is unclear to what extent Plaintiff's mental condition at the time factored into these decisions.

Accordingly, the most that the Court can do at this point is to indicate that the first order of business on the morning of trial will be to request Plaintiff to make a specific offer of proof as to the testimony that she is planning to present in this regard. The Court will then request that Defendants make a specific offer of proof as to the evidence that they would like to offer in response. The Court will then determine whether the door has been opened far enough to allow the evidence proffered by Defendants.

> 3.  **Plaintiff's Motion in Limine No. 3 to Bar Testimony by Deposition of Witnesses Within the Subpoena Power of this Court [#85]**

In the proposed Final Pretrial Order, Defendants have listed Ali Noorjehan, Roberta Egan, and Dr. Dennis Crnkovich as witnesses who may testify by deposition. As these witnesses reside within 100 miles of the courthouse, Plaintiff relies on Fed. R. Civ. P. 32(a)(3) as support for her assertion that any testimony from these individuals may not be presented by deposition. Rule 32(a)(3) provides:

> The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead; or (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition; or (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (D) that the party offering the deposition has been unable to procure the

> attendance of the witness by subpoena; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

Plaintiff argues that Noorjehan, Egan, and Crnkovich do not meet the criteria under subsections A, B, or C and that Defendants have not asked the Court to make a finding that subsections D or E apply.

Defendants agree that it is improper to use deposition testimony if a witness is within the subpoena power of the Court and concede that the Motion should be granted, with the qualification that the deposition testimony of any witness can be used if the witness is otherwise unavailable pursuant to Rule 32(a)(3)(E). Accordingly, the Motion will be granted. However, if Defendants are intending to argue that one or more of these witnesses meets the criteria for unavailability under this Rule, they must file a pleading presenting this issue immediately.

### 4. Plaintiff's Motion in Limine No. 4 to Bar Admission of Evidence of Plaintiff's Income After Her Resignation from UICOM-P [#86]

Plaintiff seeks to bar evidence indicating that she accepted a faculty position at Florida Atlantic University with a salary of $150,000, which is more than 40% higher than her last salary at UICOM-P as irrelevant to any of the issues in the copyright case. Specifically, she asserts that neither actual nor statutory damages are computed with reference to a copyright owner's salary or net worth. Actual damages are based on lost sales or licensing opportunities, while statutory damages (which Plaintiff has indicated are being sought here) allow a jury to select an amount of compensation within a specified range to vindicate an owner's rights and for deterrence. Defendants respond that such

evidence is relevant to refute her claims that she was essentially constructively discharged and to show the true motivation for her resignations from the University.

Like the evidence regarding Plaintiff's mental condition and the testimony of her treating physicians, this dispute cannot be resolved prior to trial. Depending on the offers of proof presented, the Court will then determine whether evidence regarding Plaintiff's Income after her resignation will be allowed.

**5.  Defendants' Combined Motion in Limine, and Memorandum of Law in Support Thereof, to Exclude Certain Exhibits and Witnesses Proffered by Plaintiff and to Remove Evidence from Protective Order [#88]**

Defendants have filed a 13-part Motion in Limine seeking to exclude certain witness testimony, evidence, and arguments. Each part will be addressed in turn.

A.  Testimony by Gerald Bartlett, Anthony Graham-White, and Robert Folberg

Bartlett was a professor and former chair of the Pathology Department at UICOM-P. Graham-White was a professor and author of the Faculty Advisory Committee Report. Folberg is the chair of the Pathology Department at the University of Illinois at Chicago and was the interim chair of the Pathology Department at UICOM-P. Defendants seek to bar the testimony of these witnesses as irrelevant because they are not qualified to make any legal determinations or factual findings concerning copyright infringement and ownership.

With all due respect, Defendants have adopted a rather skewed and overly narrow view of what evidence is relevant in this case. At the summary judgment stage of this case, Defendants made a similar argument regarding the irrelevance of the testimony of these individuals. Citing the Seventh Circuit's decision in Weinstein v. University of Illinois, 811 F.2d 1091, 1094 (7th Cir. 1987), the Court found that the resolution of the question of ownership required looking to the university's policies.

> According to the policy . . . a professor retains the copyright unless the work falls into one of three categories: (1) The terms of a University agreement with an external party require the University to hold or transfer ownership in the copyrightable work, or (2) Works expressly commissioned in writing by the University, or (3) Works created as a specific requirement of employment or as an assigned University duty. Such requirements or duties may be contained in a job description or an employment agreement which designates the content of the employee's University work. If such requirements or duties are not so specified, such works will be those for which the topic or content is determined by the author's employment duties and/or which are prepared at the University's instance and expense, that is, when the University is the motivating favor in the preparation of the work.

Id.

As the Court previously noted, the district court in Weinstein had concluded that the professor's article fell under the third prong of the University's policy because the professor was require to conduct and write about clinical programs. The Seventh Circuit noted that the district court's interpretation "collides with the role of the three categories as exceptions to a rule that faculty members own the copyrights in their academic work" because a university by definition "requires" its faculty to write. Id. The court then noted a tradition covering scholarly articles and other intellectual property, noting that "a professor of mathematics who proves a new theorem in the course of his employment will own the copyright to his article containing that proof." Id.

> The University's policy reads more naturally when applied to administrative duties. Perhaps the University forms a committee to study the appropriate use of small computers and conscripts professors as members. The committee may publish a report, in which the University will claim copyright. We do not say that a broader reading is impossible, but such a reading should be established by evidence about the deliberations underlying the policy and the course of practice-material . . . . We would be surprised if any member of the faculty . . . treats his academic work as the property of the University.

Id.

The Seventh Circuit addressed this situation again in Hays v. Sony Corporation of America, 847 F.2d 412 (7th Cir. 1988). In Hays, the Court of Appeals noted a long-standing common law "teacher exception" to work for hire that exempted academic writing. Id. at 416.

> Although college and university teachers do academic writing as a part of their employment responsibilities and use their employer's paper, copier, secretarial staff, and (often) computer facilities in that writing, the universal assumption and practice was that (in the absence of an explicit agreement as to who had the right to copyright) the right to copyright such writing belonged to the teacher rather than to the college or university.

Id. Although the Seventh Circuit did not have to decide the issue directly, the court noted that if forced to decide the issue, it might find that the teacher exception survives the enactment of the Copyright Act based on "the havoc that [a contrary] conclusion would wreak in the settled practices of academic institutions, the lack of fit between the policy of the work-for-hire doctrine and the conditions of academic production, and the absence of any indication that Congress meant to abolish the teacher exception." Id.

Defendants' position ignores the Court of Appeals' directive in Weinstein, to look for evidence of intent from the history and deliberations that occurred in implementing the University's policy. The challenged testimony offers evidence of the deliberative discussions behind the implementation of the University's intellectual property policy in the form of the minutes from the February 9, 1998, Senate Meeting, as well as the findings of the Senate Committee on Academic Freedom and Tenure in reviewing Plaintiff's complaint. This evidence is arguably indicative of the general practice and understanding, by both faculty and also possibly by University counsel, that teaching materials fell within the

general rule of traditional academic works for which ownership would be vested in the author of the materials. Defendants arguments regarding the Board of Trustees being the final decision-maker with respect to University policy do not make lower-level discussions underlying the implementation of the policy or evidence of practice at the University irrelevant and go to the weight to be afforded to the evidence rather than its admissibility.

Based on Plaintiff's representations about the nature of the testimony to be elicited from these witnesses, it would also appear that their testimony is not limited to opinions regarding the ownership of the teaching materials but also includes fact testimony regarding the development of the teaching materials, the investigation of Plaintiff's complaints, and notice to Defendants of the claimed impropriety of their use of the materials. Accordingly, this aspect of Defendants' Motion in Limine is denied. Defendants remain free to make specific objections at trial.

    B.    <u>Evidence re: University of Illinois Senate Committee on Academic Freedom and Tenure Report</u>

This evidence is of the same nature as the testimony of Bartlett, Graham-White, and Folberg, and therefore, the same ruling applies.

    C.    <u>Testimony by Roberta Egan, Gregory Brandt, and Stephen Fehr</u>

Egan is an administrative assistant in the Pathology Department at UICOM-P, and Brandt and Fehr are security personnel on campus. Plaintiff intends to offer their testimony regarding an alleged break-in of her office in 2002. Defendants object, arguing that this happened long before the alleged acts of infringement in 2003 for which Plaintiff seeks statutory penalties and that such evidence is therefore irrelevant.

Plaintiff responds that this testimony regarding the "surreptitious entry" into her office goes to show that her teaching materials were important to the Defendants, Rager's

contribution to the infringement through his purposeful attempt to cover-up of the unlawful entry, Defendants' willfulness, and Rager's credibility. Based on these representations, the Court cannot grant the blanket prohibition requested by Defendants, and this portion of the motion is also denied. Defendants are, of course, free to make specific objections to specific testimony at trial.

### D. Evidence re: Actual Damages

Defendants ask that Plaintiff be precluded from presenting any evidence regarding actual damages and be required to elect statutory damages under the Copyright Act. As Plaintiff has indicated that she will be seeking statutory damages, the Court sees no need to compel her to do so. Nor can the Court find that evidence of actual damages is irrelevant even if Plaintiff elects statutory damages, as there is authority suggesting that the amount of actual damages is one factor that can be considered in determining an award of statutory damages. Although this may well be a disagreement without substance, as it is the Court's understanding that Plaintiff has effectively suffered no actual damages, Defendants motion is denied.

E. <u>Evidence re: Acts by Defendants Prior to the Copyright Registration Dates of May 23, 2003, and July 14, 2003</u>

Defendants object to any evidence concerning any alleged conduct of Defendants which occurred prior to the copyright registrations at issue in this lawsuit on May 23, 2003, and July 14, 2003, as irrelevant and prejudicial. Bosch responds that Defendants' proposed limitation on the evidence attempts to deprive the jury of relevant factual evidence regarding the chronology and background leading up to the infringements that they need to determine the ultimate issues in this case. Such a limitation would be incomplete and misleading, omitting the very facts that set the stage for Plaintiff's resignation and the misappropriation of her teaching materials.

Defendants are correct that damages for copyright infringement are limited to statutory damages for those acts of infringement that occurred after she registered the teaching materials with the copyright office. However, their argument ignores the fact that the question of what evidence is admissible for purposes of determining damages is not the same as the question of what evidence is admissible for purposes of establishing chronology, providing background, outlining the relationship between the parties, refuting the defense that the use of the materials was an emergency or that Defendants had a reasonable belief that their use was non-infringing, or establishing notice, motive, or absence of mistake. Moreover, it is not difficult to see that understanding the actions of the parties and the alleged infringement that occurred in 2002 may be critical to understanding the events that then happened following the registration of the copyrights in 2003. While this evidence is undoubtedly prejudicial to Defendants, the Court cannot find that the probative value of such evidence is substantially outweighed by the danger of unfair

prejudice; to the contrary, it is Plaintiff that would be unfairly prejudiced by the blanket exclusion of such evidence. Accordingly, Defendants' request for a blanket prohibition of evidence must be denied, subject to their ability to make specific objections at trial.

> F. <u>Evidence or Allegations of Copyright Infringement That Do Not Fall Within the Scope of the Copyright Registrations At Issue in this Lawsuit</u>

Defendants next object to the admission of evidence concerning any copyright infringement claims that Plaintiff has not set forth in her complaint or registered with the Copyright Office as irrelevant and prejudicial. Pursuant to § 411(a) of the Copyright Act, registration of a copyright is a prerequisite of initiating an infringement action relating to such copyright.

Plaintiff responds that in her initial disclosures and summary judgment response, she disclosed the existence of materials wrongfully copied by Defendants in 2002, complete with notes indicating which works were copies of those produced by Defendant Ball-Kell. As such, she contends that these materials are no surprise and are necessary to rebut Defendants' claim that their use of the teaching materials was a "fair use." She further asserts that evidence of other appropriations occurring at the same time as the actionable infringement are evidence of Defendants' intent and lack of good faith. Although they may not be actionable instances of infringement, they are nevertheless relevant. The Court agrees, and Defendant's motion is denied in this respect.

> G. <u>Intentional Infliction of Emotional Distress Claim</u>

As Plaintiff's intentional infliction claim is no longer in the case, Defendants object to the admission of any evidence concerning the basis for such claim as irrelevant and prejudicial. While the Court agrees that it would be inappropriate for Plaintiff to make any

reference to a claim for intentional infliction, the Court disagrees that she must be barred from presenting any evidence that might have been deemed relevant to that claim. Rather, as has been held in prior portions of this Order, Plaintiff may present evidence to establish background, the relationship between the parties, motive, absence of mistake, etc. As such, Defendants' request for a blanket prohibition is denied. Defendants may present any specific objections at trial.

### H.  Evidence That There Are More Than "Two Works" At Issue

Defendants argue that although there are three registrations on file with the Copyright Office, two of the registrations constitute "one work" pursuant to § 504(c) of the Copyright Act for purposes of calculating statutory damages. The three registrations are: (1) a May 23, 2003, registration for examination questions; (2) a July 14, 2003, registration for portions of the M-2 General Pathology syllabus; and (3) a July 14, 2003, registration for other portions of the M-2 General Pathology syllabus. Thus, Defendants argue that the two July 14, 2003, registrations are parts of a single compilation, constituting only "one work."

Plaintiff responds that this is trial by ambush, as the proposed final pre-trial order lists three separate registrations, and Defendants statement of contested facts presents no issue as to whether the registrations constitute "one work." However, the question of whether the two registrations constitute "one work" is clearly presented in ¶ 12 of Defendants' contested issues of law.

The standard for resolving this dispute is whether the works "can live their own copyright life" and have independent economic values. Gamma Audio & Video, Inc. v. Ean-Chea, 11 F.3d 1106, 1116 (1st Cir. 1993). Bosch argues that each of the three works is

separate and distinct and not a derivative iteration. The work designated TXul-114-605 for "General Pathology Exam Questions" is undisputedly a separate work. The dispute is with respect to the work designated TXul-113-011, "Orientation Sessions and General Pathology Volume 1 Introduction, Lectures, Objectives and Independent Study," and the work designated TXul-111-817, "General Pathology Volume 1 Laboratories and Objectives."

The legal question of whether the two registrations are separate works is dependent on disputed facts regarding the ability of each to live its own copyright life or have independent economic value. Accordingly, Defendants' objection presents a mixed question of law and fact that is not capable of resolution prior to trial.

I.      Suggestions of Individual Liability for Statutory Award

As § 504(c) of the Copyright Act states that the award of statutory damages "for which any two or more infringers are liable jointly and severally" is not less than $750.00 or more than $30,000.00 with respect to any one work infringed, Defendants contend that Plaintiff should be precluded from arguing that she is entitled to individual awards from both Defendants. Defendants cite only non-binding authority for the proposition that "where two or more defendants contributed to the infringement, they are all jointly and severally liable for the award of statutory damages." See Branch v. Ogilvy & Mather, Inc., 772 F.Supp. 1359, 1364 (S.D.N.Y. 1991); *Nimmer on Copyright*, § 12.04(C)(3) at 12-124 (2006). However, Plaintiff cites no authority at all, much less binding authority to the contrary.

Given the language of § 504(c) of the Copyright Act, the Court must conclude that this portion of Defendants' motion is appropriately granted. Plaintiff will therefore not be

permitted to argue to the jury that statutory damages can be awarded against Ball-Kell and Rager separately, unless and until she has made an adequate legal showing warranting reconsideration outside the presence of the jury.

J.   Evidence re: Comments Made By a Faculty Member Regarding the University of Illinois' General Rules and Policies at a Campus Senate Meeting

Plaintiff intends to introduce evidence consisting of notes or minutes from an Urbana Campus Faculty Senate Meeting as "legislative history" of the University of Illinois' General Rules. Defendants assert that such evidence is irrelevant as the Board of Trustees, not the Faculty Senate, promulgated the General Rules. As there is nothing in the record suggesting that the statement by a faculty member during the Faculty Senate meeting was ever presented to the Board of Trustees for consideration, Defendants take the position that the remarks in the meeting minutes are not proper "legislative history."

Again, as with the testimony of Bartlett, Graham-White, and Folberg and the University of Illinois Senate Committee on Academic Freedom and Tenure Report, Defendants' argument goes to the weight to be afforded such evidence rather than its admissibility. Defendants' request to issue a blanket prohibition against this evidence is therefore denied.

K.   Failure to Seek Advice of Counsel

Defendants argue that Plaintiff should not be able to introduce evidence or argument relating to their purported failure to seek advice of counsel regarding the ownership of the Teaching Materials, as Plaintiff knows that advice of counsel was in fact sought. Plaintiff responds that as long as Defendants do not attempt to sneak an advice of counsel defense

in through the back door by testifying as to advice received from counsel in any guise, she will not argue that a negative inference should be drawn from its failure to reveal attorney-client confidences.  As the Court has held Defendant to its representation that it will not rely on an advice of counsel defense or go beyond the narrow boundaries of Rhone-Poulenc, the Court will also hold Plaintiff to her representation that she will not raise the failure to seek advice of counsel.

### L.    Evidence re: Lack of Transformative Use of the Teaching Materials

Defendants ask the Court to preclude Plaintiff from introducing evidence relating to the lack of any "transformative use" of the teaching materials.  As it is undisputed that these teaching materials were used only for educational purposes and were distributed only to students in the M-2 Pathology Course, Defendants contend that the use falls within the exception for "straight reproduction of multiple copies for classroom distribution."  Thus, they assert that any argument regarding a lack of transformative use is irrelevant.

This is effectively an attempt to reargue a point that was lost on summary judgment, where the Court held that Plaintiff was entitled to argue that Defendants lacked a transformative use and Defendant was entitled to argue that the use was in fact transformative.  The trier of fact will then evaluate the evidence and resolve this dispute of fact to determine whether or not there has been a fair use.  This portion of Defendants' motion in limine is therefore denied.

  M. <u>Evidence re: University of Illinois at Chicago Paying for Defendants' Defense</u>

Defendant seeks to preclude evidence regarding the University's decision to pay for the defense in this litigation or any reference to who bears the ultimate liability in the event of a judgment in favor of Plaintiff. Plaintiff concedes that such evidence is generally inadmissible, except if offered as proof of ownership, agency, control, bias or prejudice of witness, and then indicates that the applicability of these exceptions cannot be determined prior to trial. Thus, the Court finds that Defendants' motion shall be granted to the extent that no reference to the University's paying for the defense in this case or who bears ultimate responsibility for satisfying any judgment that might be entered shall be made until there has been an appropriate showing outside the presence of the jury that one or more of the identified exceptions applies.

  **6.** **Removal of Evidence from the Protective Order so Defendants can Present an Effective Defense**

Defendants move that if any of subsections A, B, C, E, and G of their Motion in Limine are denied, certain evidence that has been designated as confidential should be removed from the protection of the Protective Order to allow them to present an effective defense. Specifically, they would like to use evidence re: (a) a sexual relationship between Plaintiff and a student at UICOM-P, and (b) a diagnosis of certain depressive disorders by her treating physicians Drs. Hines and Crnkovich which affects her ability to handle ordinary job-related stresses. With all due respect, the Court does not find that removal from the protection of the Protective Order is necessary. Paragraph 7 of the Protective Order provides: "Confidential Information shall be used solely for the purpose of prosecution or defense of this action, and such documents may be used, consistent with the terms of this

Order, in pretrial discovery and at the trial . . . . and the parties and their attorneys shall be required to comply with the terms of this Order other than in the presentation of evidence at trial." Accordingly, there is no need to lift the protective order in order for such evidence to be used at trial.

Plaintiff objects to the use of such evidence as relevant only to her now dismissed intentional infliction claim and that it bears no relevance to the infringement claims at issue, particularly as there is no claim for emotional damages being sought. This is another instance in which the objection cannot properly be resolved prior to trial and hearing the testimony and context in which the evidence is going to be offered. Defendants are directed to advise Plaintiff prior to introducing this evidence, and at that point, Plaintiff may pursue any objection to the relevance outside the presence of the jury.

## Conclusion

For the reasons set forth above, Plaintiff's Motion in Limine No. 1 [#83] is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion in Limine No. 2 [#84] is RESERVED. Plaintiff's Motion in Limine No. 3 [#85] is GRANTED. Plaintiff's Motion in Limine No. 4 [#86] is RESERVED. Defendants' Combined Motion in Limine [#88] is GRANTED IN PART and DENIED IN PART. Some of the evidence allowed by this Order may warrant an appropriate cautionary instruction, and the Court will consider any proposed instructions that the parties tender.

ENTERED this 21st day of February, 2007.

                                                    s/ Michael M. Mihm
                                                    Michael M. Mihm
                                                  United States District Judge